OPINION OF THE COURT
Victor G. Grossman, J.
Petitioners’ motion for, inter alia, a judgment pursuant to article 78 of the CPLR, annulling, vacating and voiding the February 26, 2015 resolution No. 10 of the respondent, Town Board of Southeast, which approved the rezoning of five tax map parcels from a rural commercial zone to a highway commercial zone to permit the development of a large-scale retail and hotel development known as “Crossroads 312” (project) by respondent Crossroads 312, LLC (applicant); and determination of respondent Putnam County Department of Health, and annulling, vacating and voiding the Board’s adoption of findings pursuant to the State Environmental Quality Review Act (SEQRA) on December 18, 2014 (resolution 63 of 2014) for the project; and respondents’ cross motions to dismiss.
Petitioners are challenging the Town Board’s approval of applicant’s rezoning application from a rural commercial (RC) zone to a hybridized highway commercial zone with waivers from ridgeline and slope protection to facilitate applicant’s preferred development plan. The specific area of the project sits in the northeast quadrant of the intersection of Interstate 84 and Route 312 in the Town of Southeast. To the east of the area is the Tonetta Lake watershed and then Tonetta Lake. On the eastern side of the lake, there is a community of single family homes. Petitioners live in, or in the vicinity of, those homes.
By way of background, in response to applicant’s prior development of commercial space in the same area as the one *208 at issue here—only on the other side of Interstate 84—the Town of Southeast passed more restrictive zoning laws to prevent overdevelopment in the same area. The Town zoned the area as rural commercial, which would allow for some commercial development, but limiting such development to offices, restaurants, recreation, kennels, bed-and-breakfasts, cemeteries, country inns, conference centers, equestrian centers, farm uses, hotels, institutional, nurseries, public utilities, research labs and animal hospitals. Although applicant sought to build a hotel and office space on the property, it applied for a rezoning of the area to allow for a larger project. Although applicant later downgraded the proposed hotel to be a four-story structure, rather than the seven-story one originally planned, it proposed to triple the amount of retail space. At the same time, the Comprehensive Plan Committee was formed to update the Board’s comprehensive plan, which entertained public comments and input. The Committee ultimately did not support rezoning of the Crossroads site, and recommended no change to the RC zoning.
On December 18, 2014, the Board adopted the SEQRA findings. The Board continued to hold public meetings about the rezoning application, allowing for continued public comment. On February 26, 2015, the Board voted to approve the zoning change.
In their petition, petitioners allege, inter alia, that the Board acted in violation of Town Law. Respondents have sought to dismiss the petition, pursuant to CPLR 3211 (a), (f) and 7804 (f), asserting lack of standing and statute of limitations.
With respect to standing, the Court of Appeals recently addressed the issue of standing in land use matters. In Sierra Club v Village of Painted Post (26 NY3d 301, 310 [2015]), the Court, in reversing the Third Department’s finding that the petitioner did not have standing, stated that the Appellate Division “applied an overly restrictive analysis of the requirement to show harm ‘different from that of the public at large,’ [by] reasoning that because other Village residents also lived along the train line, [the petitioner] did not suffer noise impacts different from his neighbors.” The Court of Appeals stated that just because more than one person may be harmed does not defeat standing, and standing cannot be denied because many people suffer the same injury. (Id. at 310-311, citing United States v Students Challenging Regulatory Agency Procedures [SCRAP], 412 US 669, 687-688 [1973].)
*209 Simply put, “[t]he harm that is alleged must be specific to the individuals who allege it, and must be ‘different in kind or degree from the public at large,’ but it need not be unique.” (Id. at 311, quoting Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 778 [1991].) In Sierra Club, the Court found that the petitioner was not alleging an indirect, collateral effect from the increased train noise expected by the public at large, but rather “a particularized harm that may also be inflicted upon others in the community who live near the tracks.” (Id. at 311.) The Court held that the petitioner’s “allegation about train noise caused by the increased train traffic keeping him awake at night, even without any express differentiation between the train noise running along the tracks and the noise from the transloading facility, would be sufficient to confer standing.” (Id.)
Here, the four petitioners live within a mile of Crossroads. Ms. Dorkin has lived in her home since 1973 and has experienced increased noise pollution over the years from Route 312 and Interstate 84 West, making it difficult for her to sleep at night. She finds the current increased traffic—let alone even more traffic if the project continues as proposed—on Route 312 to be difficult to manage and worries for her and her family’s safety in terms of emergency vehicle access to her home. Ms. Jacobs explained that she lives with “chronic noise” from the highway—noise that was nonexistent prior to Highlands being built—and is sometimes so loud, that she can hear it through closed windows. She also has nightly, year-round views of parking lot, store and signage lights at Highlands, and is concerned that this will increase if Crossroads, which will be situated between Highlands and her home, is built. Ms. Catalano also explained that the beauty of Lake Tonetta and the enjoyment of her property will be negatively impacted because the ridge visible directly across the lake from her home is the same ridge upon which Crossroads is slated to be built. Finally, Mr. Napolitano, a local homeowner and volunteer firefighter with the neighboring Brewster Fire Department, explained how the already increased traffic in the area has made it very difficult for emergency vehicles to navigate the major intersection of Route 312 and Interstate 84, making him concerned about the prospect of more vehicles.
Based on the court’s assessment of these statements, under the recent holding in Sierra Club, in light of the fact that petitioners live less than a mile from the proposed site, and they have particular environmental, increased traffic, and visual concerns, the court finds that petitioners have standing. *210 (See also Matter of John John, LLC v Planning Bd. of Town of Brookhaven, 15 AD3d 486 [2d Dept 2005] [allegations regarding traffic and environmental concerns were sufficient for owner of adjacent property to which development of extended stay hotel was proposed to establish standing]; Matter of Committee to Preserve Brighton Beach & Manhattan Beach v Council of City of N.Y., 214 AD2d 335, 336 [1st Dept 1995] [standing derived from proximity of petitioners’ residences adjacent to project which will impact sightlines, availability of light and potential flow of sea air].)
As for the statute of limitations, the court disagrees with respondents’ position. (See Matter of Eadie v Town Bd. of Town of N. Greenbush, 7 NY3d 306 [2006] [no concrete injury inflicted for statute of limitations purposes in article 78 petition until rezoning was enacted, not when SEQRA process culminated in the issuing of a findings statement, because until rezoning enacted, injury was only contingent, as no injury would have been inflicted if petitioners had succeeded in defeating the rezoning through a valid protest petition or by persuading one more member of the town board to vote their way]; but see Matter of Jones v Amicone, 27 AD3d 465 [2d Dept 2006] [city council’s adoption of final environmental impact statement in support of proposed project pursuant to SEQRA completed SEQRA review process and established city counsel’s definitive position on issue that inflicted actual injury, and statutory period for seeking judicial review commenced at that time].)
While it is true that the Town Board adopted the SEQRA findings on December 18, 2014, the court finds that the final determination for which petitioners seek judicial review is the Board’s February 26, 2015 rezoning resolution, which occurred after two months of public meetings, public comments, and deliberation by the Board. This later date resulted in the “actual injury” to petitioners because the resolution essentially gave respondents the ability to proceed with the project under the new zoning classification. (See Stop-the-Barge v Cahill, 1 NY3d 218, 223-224 [2003].) Thus, the court finds that the instant action is not time-barred.
Accordingly, it is hereby ordered that the cross motions to dismiss are denied; and it is further ordered that pending the determination of this petition, any and all development is stayed in order to preserve the status quo.